IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

BENNY F. WATTS,
        Petitioner,

v.                                Case No.: 4:17cv420/RH/EMT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
        Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 1). Respondent filed an answer and relevant portions of the state court record (ECF No. 18). Petitioner refused service of Respondent's answer (*see* ECF No. 20) and did not file a reply, although the court provided Petitioner with an opportunity to file a reply (ECF No. 19).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b). After careful consideration of all issues presented by the parties, it is the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to federal habeas relief.

I.      BACKGROUND & PROCEDURAL HISTORY

The procedural background of this case is established by the state court record (ECF No. 18).  On September 21, 2006, in Leon County, Florida, Petitioner was arrested and then ultimately charged by Amended Information in Case No. 2006-CF-3568, with the following counts occurring on or about September 1, 2006:  Count I, sexual battery of a person twelve years of age or older in violation of Fla. Stat. § 974.011(5); Count II, sexual activity with a person sixteen or seventeen years of age while Petitioner was twenty-four years of age or older in violation of Fla. Stat. § 974.05; Count III, delivery of cocaine to a person less than eighteen years of age in violation of Fla. Stat. § 893.13(4)(a); and Counts IV and V, delivery of cannabis to a person less than eighteen years of age in violation of Fla. Stat. § 893.13(4)(b) (Ex. P at 2–3).[1]  On or about November 13, 2006, the State filed a notice of intent to seek sentencing as a Prison Releasee Reoffender ("PRR") pursuant to Fla. Stat. § 775.082(9) (*id.* at 22).

On January 22, 2007, Petitioner, by and through counsel, filed a "Motion for Evaluation for Competency and Sanity at the time of the Offense," which the trial

---

[1]  Hereinafter all citations to the state court record refer to the electronically filed exhibits to Respondent's answer (ECF No. 18) unless otherwise indicated.  Additionally, if a page has more than one page number, the court cites to the "Bates stamp" page number.

court granted (Ex. P at 29–31).  According to the docket, a competency hearing was held on February 14, 2007.  Petitioner filed another "Motion for Evaluation for Competency and Sanity at the time of the Offense" on February 26, 2007, which the court granted (*id.* at 32–33).  A competency hearing was held on April 3, 2007, following which the court found Petitioner to be incompetent to proceed (*id.* at 36–37).  On April 12, 2007, the trial court issued an amended order finding Petitioner incompetent to proceed due to a severe and persistent mental illness (*id.* at 38–43).  On October 12, 2007, the parties stipulated to Petitioner's competency upon review of an evaluation by Dr. William Spence (*id.* at 571–76).  The court issued an order finding Petitioner competent to proceed on November 8, 2007 (*id.* at 46).

On January 18, 2008, the State filed a motion to declare Petitioner a Habitual Violent Felony Offender pursuant to Fla. Stat. § 775.084 (Ex. P at 49).  Then, on February 14, 2008, Petitioner executed a negotiated plea agreement with the following terms:  Petitioner would enter pleas of *nolo contendere* to Counts One, Three, Four, and Five and be sentenced to concurrent 15-year terms of imprisonment on each count, with credit for 512 days time served; the sentence on Count One would be imposed as a PRR; and Count Two would be *nolle prossed* (*id.* at 50–53; 57–66).  The

trial court imposed sentence pursuant to these terms, and Petitioner did not appeal (*id.* at 627–44).

Beginning in October of 2010, Petitioner filed a number of *pro se* motions for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, which were denied for various reasons, including that they were untimely filed.  By mailbox rule on June 20, 2013, Petitioner filed a *pro se* "Motion for Filing Belated 3.850 Post Conviction Relief Motion" alleging that on January 27, 2009, he delivered his 3.850 motion to prison officials for mailing, but the motion had not been received by the clerk of court (Ex. P at 508–11).  Petitioner attached a copy of his January 27 motion bearing a correctional institution stamp reflecting its date of delivery to prison officials for mailing as January 27, 2009 (*id.* at 512–33).  The circuit court held an evidentiary hearing on May 31, 2013, and granted Petitioner's motion to file a belated Rule 3.850 motion (*id.* at 690–701).  On July 21, 2013, the circuit court summarily denied all six of the claims presented in the Rule 3.850 motion (*id.* at 645–47).  Petitioner appealed the circuit court's decision to the Florida First District Court of Appeal ("First DCA").  On April 2, 2014, the First DCA affirmed the lower court's denial of all of Petitioner's post-conviction claims except Ground Five, which asserted that his trial counsel provided ineffective assistance by advising him

to enter a plea without informing him that insanity was an available defense (Ex. N).

*Watts v. State*, 136 So. 3d 1225 (Fla. 1st DCA 2014).  Therefore, the First DCA

affirmed in part, reversed in part, and remanded for further proceedings.  *Id.*

On remand, the court set an evidentiary hearing on Ground Five and appointed

counsel for Petitioner (Ex. P at 713–14, 716, 718, 721, 747).  Petitioner's counsel

adopted two additional grounds (Grounds Seven and Eight) set forth in Petitioner's

*pro se* supplement to the original Rule 3.850 motion (*id.* at 768–81, 813, 818).  The

State consented to, and the circuit court permitted, amendment of Petitioner's 3.850

motion to add Ground Eight.  An evidentiary hearing was held on October 14, 2015

(Ex. P at 849–920).  The circuit court denied the pending claims (Grounds Five and

Eight) in an order rendered February 19, 2016 (*id.* at 819–27).  Petitioner appealed to

the First DCA.  The First DCA per curiam affirmed without written opinion, and

denied Petitioner's motion for rehearing (Exs. S, T).  The mandate issued September

27, 2017 (Ex. S).  *Watts v. State*, Case No. 1D16-1241, 2017 WL 2379763 (Fla. 1st

DCA 2017).

Petitioner filed the instant, timely *pro se* petition for a writ of habeas corpus by

mailbox rule in this court on September 13, 2017.  The petition is now ripe for

adjudication.

II.    STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody

pursuant to 28 U.S.C. § 2254.  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.

Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim—
>
> > (1)  resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in the
> > State court proceeding.

28 U.S.C. § 2254(d).

The United States Supreme Court explained the framework for § 2254 review

in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  The

appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant
> the writ if the state court arrives at a conclusion opposite to that reached
> by this court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable
> facts.  Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct governing

legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue presented in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court holdings.

*Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's holdings.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529

U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam). In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, *supra*, at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on an unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state

court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *See Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit has declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an

insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

## III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *Bailey v. Nagle*, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This

court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See Coleman v. Thompson*, 501 U.S. 722, 734–35 & n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).

In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303. In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar. *Id*.

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach

the merits of a claim.  *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id*.

Within this framework, the court will review Petitioner's claims.

## IV.   PETITIONER'S CLAIMS

A.    Ground One:  "The state court erred in denying Petitioner's claim that trial counsel was ineffective for failing to advise him of the availability of an insanity defense."

Petitioner alleges his trial counsel was ineffective for failing to advise him of the availability of an insanity defense prior to entry of his plea (ECF No. 1 at 5; attached Memorandum at 7–9).

Respondent contends the state court's rejection of this claim was not based upon an unreasonable determination of the facts, nor was it contrary to or an unreasonable application of clearly established federal law (ECF No. 18 at 29–41).

1.    Clearly Established Federal Law

The two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) applies to claims that counsel was ineffective during the plea process. *See Lafler v. Cooper*, 566 U.S. 156, 162-63, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012) (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); *Missouri v. Frye*, 566 U.S. 133, 145, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012) (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); *Hill v. Lockhart*, 474 U.S. 52, 48, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying

*Strickland*'s two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).  *Strickland*'s first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'"  *Hill*, 474 U.S. at 57 (quoting *Strickland*, 466 U.S. at 688).  The focus of inquiry under the performance prong of the *Strickland* standard is whether counsel's assistance was "reasonable considering all the circumstances."  *Strickland*, 466 U.S. at 691.  *Strickland*'s second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Hill*, 474 U.S. at 59.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *See Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d

284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the court explained in *Richter*:

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689–690, 104 S. Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one.
> . . . .
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S. Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333 n.7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles* [*v. Mirzayance*], 556 U.S. [111,] 123, 129 S. Ct. [1411,] 1420[, 173 L. Ed. 2d 251 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 123, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105.

2. Federal Review of State Court Decision

Petitioner presented this claim as Ground Five of his Rule 3.850 motion (Ex. P at 521–23). The circuit court summarily denied the claim, but the First DCA

reversed this denial on appeal.  On remand, and after an evidentiary hearing, the circuit court adjudicated the claim as follows:

## II. THE EVIDENTIARY HEARING

7.    As set forth above, this Court conducted an evidentiary hearing on October 14, 2015.  Mr. Watts testified on his own behalf. Testimony was also provided by his then counsel, Michael Rayne.

## A.  TESTIMONY OF ATTORNEY RAYNE

8.    Attorney Rayne testified by telephone by agreement of the parties.  Mr. Rayne indicated that in 2006, he was an attorney practicing in Leon County, Florida—primarily in the area criminal defense.  He had been admitted to practice in Florida in 2002 and previously had worked with the Public Defender's Office.  He testified that he was familiar with the insanity defense (although he had never employed it) and was of the opinion that it "hardly ever worked."  He testified that he had not reviewed his entire file relating to Mr. Watts prior to appearing by phone, but that [he] had reviewed the 3.850 motion and supplement.  He was familiar with the history of Mr. Watts['] competency issue and stated that the concern was first raised by the defendant's family and fiancé [sic].  Counsel did not think his client was incompetent but was aware that he was taking psychotropic medications and that fact had raised his concern.

9.    Mr. Rayne recounted the plea discussions.  He was aware that the prosecution was seeking enhanced penalties against Mr. Watts as a habitual violent felony offender.  It was his (Rayne's) assertion that Mr. Watts had a decent chance at trial, believing that there was some "quid pro quo" regarding the sexual encounter between his client and the alleged victim, and that, thus, the issue of consent was in play.  Mr. Rayne further testified that it was the defendant who insisted on taking the plea offer.

10.     During the course of Mr. Rayne's testimony it was revealed that he is currently unable to practice law in the State of Florida.  (He has been placed on suspension for matters unrelated to the case at bar.)

11.     Mr. Rayne represented Mr. Watts at a bond hearing in January 2008.  At that time they were confronted with Mr. Watts['] multiple prior violations.  (Watts was an eight time convicted felon with charges including robbery, kidnapping, and cocaine.) Mr. Rayne's client further understood his "Prison Releasee Re-offender" status.

12.     Counsel testified that they (he and his client) had extensive discussions about whether or not to go to trial.  It was his [ ] opinion that his client was clear and lucid and knew what he was doing.  Rayne had no question about Mr. Watts['] competency at the time of his plea.  As Mr. Watts['] counsel, Mr. Rayne also considered the fact that Mr. Watts became easily frustrated and would likely not make a good impression in the courtroom.  He also considered the fact that the victim was an underaged female, the different races of the assailant and victim, and the availability of DNA evidence.

13.     The record reflects that on February 26, 2007, Mr. Rayne filed a *"Motion for Evaluation of Competency and Sanity at the Time of the Offense."*  Dr. William Spence, PhD. was appointed to do so.  On March 19, 2007 Dr. Spence found Mr. Watts incompetent to proceed, with a diagnosis of paranoid schizophrenia.  As to his competency at the time of the offense, Dr. Spence stated *"I was unable to assess sanity at the time of the offense in view of Mr. Watts mental status."*  It does not appear that a formal opinion regarding competency at the time of the offense was ever provided to the court.

14.     Mr. Rayne testified that he discussed the insanity defense with his client on numerous occasions.  He further indicates that he did so before ordering the doctor[']s report.  He further stated that the legal ramifications of the insanity defense were discussed with Mr. Watts. According to counsel, it would have *"been their easiest defense and a great deal of attention was paid to that."*

15.    Although no formal report was ever presented to the Court, attorney Rayne maintains that he did discuss the ability to determine sanity at the time of the offense, and that it was his understanding that Dr. Spence was of the opinion that Mr. Watts was sane at the time of the offense and also at the (then) current time.

16.    With regard to the issues surrounding the Court's determination that Mr. Watts was competent to proceed, attorney Rayne testified that he had discussed the matter with his client prior to the judge finding him to be competent and also discussed the Rule 3.212 procedures.  He further indicated that he did review[ ] Dr. Spence's report prior to its use by the judge.  Accordingly, he stipulated to the judge considering the report in the absence of life [sic] testimony for the purposes of the competency determination.

## B.  TESTIMONY OF MR. WATTS

17.    The petitioner, Watts also took the stand before this Court and testified on his own behalf.  He recounted that he had been found to be mentally ill prior to the alleged offense.  He maintains that Mr. Rayne never told him about the availability of the insanity defense but did concede that they had discussions concerning the DNA evidence and the apparent presence of his DNA on the minor accuser.

18.    Mr. Watts insists that if he had known about the insanity defense he would have gone to trial.  He maintains that his counsel never discussed any defense with him, that he never knew which direction to take and that he was "sedated" at all times material.  He further indicates that in light of the allegations that they were "drinking smoking [sic]." Mr. Watts further testified that he would not *knowingly have sex with a female under 18 although he also said he did not know it was against the law and that he thought "16 or 17 was okay."*

19.    Mr. Watts asserts that they (he and Rayne) never discussed the procedure for his competency hearing[;] he asserts that his plea was coerced.  He denied that he knew his exposure was up to 60 years.  He

asserts that although he represented to the court that he was not under the effect of any medications that would affect his ability to enter into a plea, that he was simply "relating what I was told by the lawyer."  He also states that he did not know at the time he could be "under the influence" of medication.

20.    Mr. Watts was adamant that he would have gone to trial if he [had] known of the availability [of] the insanity defense.  Confronted with the hypothesis that the defense rarely works, he is still insis[tent] he would have gone to trial because "I didn't rape nobody."

21.    The record indicates that the defendant and his counsel considered and discussed the availability of the insanity defense.  The evidence further establishes that Mr. Watts did not want to raise the insanity defense but instead had intended to show that what occurred was a consensual trade. . . drugs for sex.

22.    Mr. Watts['] own testimony is inconsistent with the insanity defense.  He indicated that he did not want to have sex with anyone under 18, although that he thought 17 or 16  years of age was "okay[.]" [T]his would be inconsistent with the statutory requirements set forth in Section 775.027, Florida Statutes.

23.    Mr. Watts denies any recollection of the competency hearing and denies discussing the hearing with his attorney.  He denies discussing any defenses with his attorney.

## FINDINGS
## A. AS TO GROUND 5

24.    The record reflects that up until the eve of trial, Mr. Watts was adamant about wanting a trial apparently based on the consent issue. He had maintained that he was "absolutely innocent and wanted to go to trial."  It was after the matter was set that he became equally adamant that he wanted to take a plea.  The record also reflects that it was Mr. Watts who informed his attorney of the desire to take a plea.  It appears

that there were extensive discussions regarding a plea and the Court (The Hon. Angela C. Dempsey presiding) conducted a thorough colloquy.

25.    There is no evidence before this court that the insanity defense was available.  While there is evidence of intermittent questions or concerns regarding Mr. Watts competency, there is no evidence that he did not know what he was doing at the time of the offense, or that if he did understand what he was doing, that he didn't know that it was wrong.  Indeed there is evidence to the contrary.

26.    It appears that Mr. Watts made an intelligent decision, there was overwhelming testimony against him, a confession, clear evidence of drug use and sex with the victim, DNA evidence, and the testimony of a minor.

27.    Prior to the bond hearing on January 8, 2008 all indications are that Mr. Watts wanted to go to trial, not on the insanity defense but on the issue of consent.  At the time of his plea he believed he had legitimate defense (consent) and agreed to take the plea to cut his losses.  It is disingenuous to suggest that he would have made a different decision simply by shifting the defense.  He maintains to this day as he did at the time that "I didn't rape anybody."

28.    It is also apparent that Mr. Watts and his counsel were under the impression that consent may have been a defense to the charges against Mr. Watts.  It is also clear that up until the time he took a plea Mr. Watts intended to go to trial based on that misunderstanding.

29.    Although both Mr. Watts and his counsel apparently were under the misguided opinion that consent was a defense to the charge of sexual activity with a 17-year-old, that is a non-issue here.  As noted earlier, Mr. Watts vehemently maintained that he was innocent and wanted to proceed to trial.  At some point he and his counsel determined that the dangers of going to trial outweighed the potential for success.  Mr. Watts was an eight time convicted felon.  At the time he was facing

15 years at a minimum and up to 30 as a Prison Releasee Re-offender and Violent Habitual Offender.

30.     The record reflects that [] subsequent to the bond hearing in January 2008 that Mr. Watts reconsidered his position and that the decision to do so was reasonable.  There was evidence that the offense had occurred.  There was a confession, there were  drugs and alcohol with the victim, DNA evidence, and the minor's testimony.  There is also evidence that Mr. Watts did not want to raise the insanity defense.

31.     The Court finds that Mr. Watts did not want his counsel to pursue the insanity defense.  An attorney will not be deemed ineffective for honoring his clients wishes.  <u>Brown v. State</u>, 894 So. 2d 137, 146 (Fla. 2004).  Further the record relating to any lack of sanity at the time of the offense is far from "clear and convincing."
. . . .

## IV.  HOLDING

Having considered all the evidence herein and the law, this court finds that the motion of the defendant is not well taken, and does not meet the criteria established in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and the cases following it, on the issue of effective representation of the client.

(Ex. P at 820–27) (emphasis in original).  The First DCA affirmed in an unexplained

decision (Ex. S).

In *Wilson v. Sellers*, __ U.S. __, 138 S. Ct. 1188 (2018), the Court held that

where there has been one reasoned state judgment rejecting a federal claim followed

by a later unexplained order upholding that judgment or rejecting the same claim, federal habeas courts employ a "look through" presumption. The *Wilson* Court described this presumption as follows:

> We hold that the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

*Id.* at 1192.

Here, the post-conviction court correctly identified *Strickland* as the federal law governing this claim (Ex. P at 826–27). Therefore, Petitioner is entitled to federal habeas relief only if he demonstrates that the state court's adjudication of this IATC claim was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts in light of the evidence presented to the state court.

The following evidence was presented to the state court with respect to the IATC claim presented in Ground One. At the post-conviction evidentiary hearing, Michael Rayne, Petitioner's counsel in the trial proceedings, testified that in his capacity as a public defender handling felonies and later in criminal defense private practice, he was "no stranger" to cases involving defendants with mental health issues

(Ex. P at 863). Rayne testified he had numerous discussions with Petitioner about a

possible insanity defense (*id.* at 868). Attorney Rayne testified as follows:

> Q. [by Petitioner's post-conviction Counsel]: Okay. Well, and I
> just want to make sure because Ms. Bueno may ask it and I'll go ahead
> [with] it. If the issue of him not really being competent never jumped
> out at you, tell us how the discussions regarding him not being sane at
> the time of the offense popped out?
>
> A. [by Michael Rayne]: Okay. I spoke to him in the jail, you
> know, explained to him, hey, it appears that you have an issue related to
> schizophrenia. These are the sort of types of issues that we have to take
> a look at to determine whether or not you are even competent to go to
> trial, to enter a plea. And also, even if we did decide to go to trial what
> we can use of this. If you are in fact insane [and] that is accepted by the
> court then yes, you could win. So something along those lines, probably
> numerous occasions. And when I say numerous, at least five or six times
> initially before I would have ordered the doctor's report, and afterwards
> to explain to him what the consequences of the report were.
>
> Q. Okay. Did he at any time talk to you about wanting to go to
> trial and to assert the defense of not guilty by reason of insanity?
>
> A. No.

(Ex, P at 869–70).

Attorney Rayne's testimony continued:

> Q. Okay. And did you ever speak to Dr. Spence directly about
> whether or not he would be able to testify as to Mr. Watts' sanity at the
> time of the offense?
>
> A. Yes, a lot with Dr. Spence.

> Q.  Okay.  And what was his position as far as being able to testify that at the time of the offense Mr. Watts was sane?
>
> A.  My conversations with Dr. Spence was that he [would] testif[y] in accord with his report which was that was it [sic] was logical, sane both at the time of the offense and afterwards.  At the time of the plea were sane [sic], no insanity, no incompetence.

(Ex. P at 873–74).

On cross-examination, Assistant State Attorney Lorena Bueno asked Attorney Rayne if Petitioner wanted to go to trial but not raise an insanity defense (Ex. P at 883).  Attorney Rayne responded, "Yes, that's my recollection of what happened.  He wanted to go to trial and he wanted to show that this was a consensual trade of drugs for sex type deal" (*id*.).  Attorney Rayne also testified that Petitioner would need to admit he committed the crime in order to pursue an insanity defense:

> Q.  [by ASA Bueno]:  And in the case of raising an insanity defense, basically, Mr. Watts would, or you on behalf of Mr. Watts would have to admit to him committing the crime but say at the time he committed the crime he was insane?
>
> A.  [Mr. Rayne]:  Exactly.
>
> Q.  Right.  And all of these were issues or things that you had looked at and discussed with Mr. Watts?
>
> A.  Right.

(Ex. P at 882).

In contrast to Attorney Rayne's testimony, Petitioner testified he would have

gone to trial if Attorney Rayne had discussed an insanity defense with him (Ex. P at

892–93).

>    Q.    [by Petitioner's post-conviction counsel]:  Did [Mr. Rayne]
> ever tell you that it was a defense to this crime that merely that because
> the girl had consented—and I say girl because she's under 18 and not in
> a derogatory factor but just to emphasize her age, the young lady.  Did
> he ever tell you that if the young lady had consented that you could win
> at trial?

>    A.    [Petitioner]:  He never discussed a defense with me.  We never
> got—I never seen [sic] him on a regular or nothing like that for him to
> discuss a defense.  We never discussed the defense.  I never knew which
> direction he was taking my case.

>    Q.    Okay.

>    A.    And on top of that, I was heavily sedated with medication.  I
> was in a mental health place.  When I came back I still was under
> psychotropic medication and heavily sedated.

>    Q.    When you talked to him, the times you talked to him, did you
> understand what he was saying to you?

>    A.    Somewhat but he never, as far as an actual defense–

>    Q.    Okay.

>    A.    —he never discussed that.  He never told me, okay, well, I'll
> deposition [sic].  He never gave me details of, I went to see this lady or
> I went to do this, I went to check this, I checked this.  He never did none
> of that.

(Ex, P at 893).  Petitioner reiterated several times that Attorney Rayne did not discuss

any defenses with him, related to either consent or his mental health issues.  He

testified he would have gone to trial if Rayne had advised him that an insanity defense

was available:

> Q.  [by Petitioner's post-conviction counsel]:  Okay.  So let's wrap up a few other questions.  Had you known that an insanity defense was at least available to you, would you have gone to trial?
>
> A.  [Petitioner]:  Yes, I would have.
>
> Q.  If somebody had told you an insanity defense rarely if ever works, would that have impacted your ability or your decision rather?  If somebody told you you had a five percent chance of winning on this, would that have impacted your decision?
>
> A.  No, because, for the simple fact that I suffer from mental health.  I am mentally ill.  I've been suffering for years.  And at that time I hadn't took my medication and I was drinking and smoking.  I would use that defense.  It was the truth.
>
> Q.  Okay.  So no matter what somebody said, you would have gone to trial and proven that?
>
> A.  I'd have went [sic] to trial with that defense.  I would still go to trial with it.  It's the truth and I didn't—honestly, from me to you, I didn't rape nobody.  I don't feel like—I didn't do no crime.

(Ex. P at 902–03).

Upon hearing the testimony of both Attorney Rayne and Petitioner, the state

court credited trial counsel's testimony, that he discussed the viability of the insanity

defense with Petitioner, but Petitioner did not wish to pursue it. The federal court

must defer to the state court's factual determinations, including its credibility

determinations, unless Petitioner points to clear and convincing evidence in the record

which rebuts the state court's finding:

> Determining the credibility of witnesses is the province and function of
> the state courts, not a federal court engaging in habeas review. Federal
> habeas courts have "no license to redetermine credibility of witnesses
> whose demeanor has been observed by the state trial court, but not by
> them." *Marshall v. Lonberger*, 459 U.S. 422 (1983). We consider
> questions about the credibility and demeanor of a witness to be questions
> of fact. *See Freund v. Butterworth*, 165 F.3d 839, 862 (11th Cir. 1999)
> (*en banc*). And the AEDPA affords a presumption of correctness to a
> factual determination made by a state court; the habeas petitioner has the
> burden of overcoming the presumption of correctness by clear and
> convincing evidence. 28 U.S.C. § 2254(e).

*Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011). *See also*

*Williams v. Johnson*, 845 F.2d 906, 909 (11th Cir. 1988) ("In habeas corpus cases .

. . [i]mplicit findings regarding the credibility of witnesses are included among the

findings that this Court must credit.").

Here, Petitioner has not overcome the presumption of the correctness of the

state court's credibility determination by clear and convincing evidence. Therefore,

this federal court presumes that Attorney Rayne discussed the viability of the insanity

defense with Petitioner, but Petitioner did not wish to pursue it. Considering this fact,

Petitioner failed to demonstrate that Attorney Rayne performed deficiently by failing to advise him of the availability of an insanity defense.

Additionally, the state court determined that there was insufficient evidence in the record showing that the insanity defense was available.

The Florida statue authorizing an insanity defense provides:

**(1) Affirmative defense**.—All persons are presumed to be sane. It is an affirmative defense to a criminal prosecution that, at the time of the commission of the acts constituting the offense, the defendant was insane. Insanity is established when:

(a) The Defendant had a mental infirmity, disease, or defect; and

(b) Because of this condition, the defendant:

1. Did not know what he or she was doing or its consequences; or

2. Although the defendant knew what he or she was doing and its consequences, the defendant did not know that what he or she was doing was wrong.

Mental infirmity, disease, or defect does not constitute a defense of insanity except as provided in this subsection.

**(2) Burden of proof**.—The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

Fla. Stat. § 775.027 (eff. June 19, 2000).

As the Florida statute provides, mental disease by itself does not constitute a defense of insanity; therefore, the fact that Petitioner was diagnosed with paranoid

schizophrenia did not, by itself, support an insanity defense.  Further, as noted by the circuit court, Petitioner testified that while he would not knowingly have sex with a female under 18 years old, he thought "16 or 17 was okay" (Ex. P at 823–24). Additionally, according to Attorney Rayne, who the state court found credible, Rayne discussed Petitioner's sanity with Dr. Spence, and Dr. Spence indicated he would testify that Petitioner was sane at the time of the offense.

The state court's rejection of Petitioner's IATC claim was not contrary to or an unreasonable application of *Strickland*, and it was not based upon an unreasonable determination of the facts.  Therefore, Petitioner is not entitled to habeas relief on Ground One.

B.    <u>Ground Two:  "The state court erred in denying Petitioner's claim that trial counsel was ineffective for failing to object to the trial court's failure to hold a competency hearing."</u>

Petitioner alleges that his counsel was ineffective in failing to object to the trial court's failure to hold a competency hearing (ECF No. 1 at 7; attached Memorandum at 10–13).

Respondent contends the state court's rejection of this claim was not based upon an unreasonable determination of the facts, and it was not contrary to or an unreasonable application of clearly established federal law (ECF No. 18 at 41–47).

1.      Clearly Established Federal Law

The law governing ineffective assistance of counsel claims is set forth *supra*.

2.      Federal Review of State Court Decision

Petitioner presented this claim as Ground Eight of the amendment to his Rule

3.850 motion (*see* Ex. P at 773–75).  The claim was addressed at the post-conviction

evidentiary hearing.  The circuit court adjudicated the claim as follows:

## B.  AS TO GROUND 8

32.     The Court finds the matters set forth in supplemental Ground 8 to be without merit.  There is record evidence that Mr. Watts was found to be incompetent to proceed in the spring of 2007 but that he was restored to competency by the fall of that year.

33.     On November 8, 2007 this court (the Hon. Angela Dempsey presiding) found Mr. Watts competent to proceed upon considering the report of Dr. Spence, with stipulation of counsel.  A hearing was conducted, counsel was fully capable of stipulating to the reliance on Dr. Spence's report, and there is evidence that Mr. Watts was consulted[,] an order was entered, and there was a basis therefore.

34.     This court finds that Mr. Watts was competent to proceed from August 2007 forward.  There is ample evidence to support that he was competent to consider the plea offer tendered to him and that the court's determination of competency followed proper procedure.

(Ex. P at 826).  The court held that Petitioner failed to satisfy the *Strickland* standard.

The First DCA affirmed the circuit court's adjudication in an unexplained decision

(Ex. S).

At the post-conviction evidentiary hearing, Attorney Rayne testified as follows

on the issue of Petitioner's competency:

> Q. [by Petitioner's post-conviction counsel]: Okay. And are you able to actually describe to us what it was, like—well, let me ask it to you this way. What w[ere] your encounters with him like? Did he appear to you to have any sort of mental illness?

> A. Initially—at the end he was very clear and lucid in the particulars about what he wanted to do[,] but then it's not that he was somehow vague in the beginning, it's just that the trauma of being arrested and being in jail. But definitely, at the end we were clear. And at no point I felt or did I feel like I could not communicate with him or that he was out of it or didn't understand what I was talking about.

> Q. Okay. And so the issue of him being competent was raised by, you said a then girlfriend at the time?

> A. I learned that he was on some type of psychotropic medication. And that indicated to me that there was something, some type of mental issue that needed to be looked at and that it could possibly be used as his defense.

> Q. Okay. All right, and so we're articulating it correctly and I understand it, don't let me put words in your mouth and correct me if I'm wrong. There was nothing that you observed that would have led you to believe that he was at the time incompetent. It was merely the fact that he was on some sort of psychotropic medications. And that fact having been brought to your attention that caused you concern. Am I right or am I wrong?

> A. That's correct, that's correct.

(Ex. P at 866–67). Attorney Rayne's testimony continued:

Q.  Okay.  Now, getting back to the issue of competence, you are—you were at the time aware you could not actually stipulate to your client being competent or not, is that correct?

A.  Correct.

Q.  But you did stipulate on the judge relying on the written report of Dr. Spence finding him competent, and you had no issues doing that, right?

A.  Right.

Q.  Okay.  Do you recall ever discussing with Mr. Watts that stipulation or that agreement prior to making it in court?

A.  One more time.

Q.  All right.  Once the report came back saying he was competent, did you talk to Mr. Watts about the fact that he was now competent?

A.  Yes.

Q.  Okay.  Did you do that before the judge actually found him competent?

A.  Yes.

Q.  Okay.  And did you mention to him anything about the hearing procedures that may be available under 3.212?  Meaning the restoration of competency procedures.

A.  Now that I cannot recall.  Like I said—no, I don't recall when (inaudible) discussed with him.

Q. Okay. But prior to agreeing that the judge could rely on the written report did you in fact review Dr. Spence's report finding him competent?

A. Absolutely.

(*Id*. at 875-76).

During cross-examination by ASA Bueno, Attorney Rayne testified as follows:

Q. Okay. Now, in regards to the stipulation to competency, at the time that you had spoken to Mr. Watts about Dr. Spence's report showing that he was competent, did you have any question in your mind about his competency? Like was he—

A. No, ma'am.

Q. Okay. So he was able to understand what you were saying, he seemed to understand the report, you didn't have any question from dealing with him at that point?

A. No. It's rare that a client normally would plead to such a low sentence. And like I said, we had extensive discussions about going to trial but he was very clear. It's one of those moments that for some reason that always sticks out. It's rare that a guy will approach you about taking a plea to 15 years. Both me and his fiancée were shocked but he was very clear and lucid about it and knew what he was doing.

Q. Okay. And as an officer of the court, you know, my understanding is as the defense attorney, if you have a question about your client's competency you have to have them—you have to raise that issue with the court and you have to have them evaluated, is that correct?

A. Correct.

Q.   Okay.   When it came time for you to go to a hearing on competency, as an officer of the court you didn't have any issue with his competency?  Dr. Spence's report found him competent so you felt fine with having the Court rely on Dr. Spence's report?

A.  Yes.

(Ex. P  at 880–81).

Petitioner testified at the evidentiary hearing that he did not recall being in court when the judge made the determination that he was competent to proceed to trial (Ex. P at 897).  He also claimed he did not discuss the matter with Attorney Rayne at all (*id.*).

The Eleventh Circuit has held that to establish *Strickland* prejudice based upon counsel's failure to request a competency hearing, a petitioner must show that "there was a reasonable probability that he would have received a competency hearing and been found incompetent had counsel requested the hearing."  *Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700 F.3d 464, 479 (11th Cir. 2012).

Here, the state court record supports the state court's factual finding that the trial court found Petitioner competent to proceed after a hearing on October 12, 2007, during which the parties stipulated to Dr. Spence's report in which Spence opined that Petitioner was competent to proceed (Ex. P at 571–76).  Following that hearing, the trial court issued an order finding Petitioner competent to proceed (*id.* at 46).

Petitioner offered no evidence to the post-conviction court, at the evidentiary hearing or otherwise, that there was a reasonable probability he would have been found incompetent had trial counsel requested an evidentiary hearing on the issue of competency instead of stipulating to Dr. Spence's finding of competency.

Petitioner failed to demonstrate that the state court's rejection of the IATC claim asserted in Ground Two was contrary to or an unreasonable application of *Strickland*, or that it was based upon an unreasonable determination of the facts. Therefore, Petitioner is not entitled to federal habeas relief on Ground Two.

C.    Ground Three:  "Trial counsel was ineffective for failing to advise Petitioner before the entry of his plea that the speedy trial time had expired on the Amended Information of Delivery of a Controlled Substance to a Minor by an Adult."

Petitioner contends defense counsel was ineffective in failing to advise him, prior to entry of his guilty plea, that the speedy trial time had expired on the three counts of delivery of a controlled substance to a minor by an adult (Counts III, IV, and V) of the Amended Information (ECF No. 1 at 8; attached Memorandum at 13-14). Petitioner concedes he did not present this IATC claim to the state courts (*see* ECF No. 1 at 8–9, attached Memorandum at 5).  He contends he is entitled to federal review of his IATC claim under *Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309, 182

L. Ed. 2d 272 (2012), because the procedural default was caused by ineffective assistance of post-conviction counsel (ECF No. 1, Attachment 1 at 5–7).

Respondent contends Ground Three is unexhausted and procedurally barred (ECF No. 18 at 48–52). Respondent argues Petitioner is not entitled to federal review under *Martinez*, because his underlying IATC claim is not substantial (*id.*).

As previously discussed, a federal court may consider the merits of a procedurally defaulted claim if the petitioner can show both "cause" for the default and "prejudice" from a violation of his constitutional right. *Wainwright v. Sykes*, 433 U.S. 72, 84–85, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). To establish cause, a petitioner must ordinarily "demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010) (quoting *Murray*, 477 U.S. at 488). Before its 2012 decision in *Martinez*, the Supreme Court had long held that § 2254 petitioners cannot rely on errors made by their state collateral counsel to establish cause. *See Coleman*, 501 U.S. at 752–53. *Martinez* created a limited, equitable exception to *Coleman* where, (1) "a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding," as opposed to on direct appeal; (2) "appointed counsel in the initial-review collateral proceeding,

where the claim should have been raised, was ineffective under the standards of *Strickland* "; and (3) "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one." *Martinez*, 566 U.S. at 14 (citations omitted). Accordingly, the petitioner must "establish that his collateral counsel's conduct 'fell below an objective standard of reasonableness,' and that, 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Hittson v. GDCP Warden*, 759 F.3d 1210, 1262 (11th Cir. 2014) (quoting *Strickland*, 466 U.S. at 688).

In *Hittson*, the Eleventh Circuit explained:

> [T]he merits of the underlying claim is only a part of the *Strickland* analysis. With unlimited time and the benefit of hindsight, a petitioner can come up with any number of potentially meritorious ineffective-assistance claims that he now wishes his collateral counsel had raised. However, a petitioner does not establish constitutionally defective performance simply by showing that (a) potentially meritorious claims existed and (b) his collateral counsel failed to raise those claims. *Murray*, 477 U.S. at 486, 106 S. Ct. at 2644 ("[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default."). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751–52, 103 S. Ct. 3308, 3313, 77 L. Ed. 2d 987 (1983). "[A] per se rule that . . . the professional advocate, [is not] allowed to decide what issues are to be pressed . . . seriously undermines the ability of counsel to present the client's case in accord with counsel's professional evaluation." *Id.* at 751, 103 S. Ct. at 3313.

As we have explained, *Strickland* instructs courts to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"—that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 689–90, 104 S. Ct. at 2065–66. To overcome this presumption, a petitioner must "establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

Thus, to show that his habeas counsel failed to provide the level of representation required by *Strickland*, [the petitioner] must show more than the mere fact they failed to raise potentially meritorious claims; he must show that no competent counsel, in the exercise of reasonable professional judgment, would have omitted those claims.

*Hittson*, 759 F.3d at 1263 (footnote omitted).

The Eleventh Circuit then explained *Martinez*'s "substantial claim" requirement:

*Martinez* articulated the "substantial claim" requirement as follows:

To overcome the default, a prisoner must . . . demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. *Cf. Miller–El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (describing standards for certificates of appealability to issue).

*Martinez*, — U.S. at —, 132 S. Ct. at 1318–19. Neither *Martinez* nor *Trevino* [*v. Thaler*, — U.S. —, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013)] elaborated on or applied this standard, but we take the Court's

reference to *Miller–El* to mean that it intended that lower courts apply the already-developed standard for issuing a COA, which requires "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

As the Court explained in *Miller–El*, "[a] petitioner satisfies this standard by demonstrating . . . that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." 537 U.S. at 327, 123 S. Ct. at 1034.  Where a petitioner must make a "substantial showing" without the benefit of a merits determination by an earlier court, he must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604, 146 L. Ed. 2d 542 (2000).  That does not mean that a petitioner must show "that some jurists would grant the petition." *Miller–El*, 537 U.S. at 338, 123 S. Ct. at 1040.   "[A] claim can be debatable even though every jurist of reason might agree, after the . . . case has received full consideration, that petitioner will not prevail." *Id.*

We observe that this standard is similar to the preliminary review conducted by district judges in § 2254 proceedings.  Rule 4 of the § 2254 Rules allows the district judge to summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief."  The Advisory Committee Notes further instruct that, in keeping with the heightened, fact-pleading requirement in habeas cases, "the petition is expected to state facts that point to a real possibility of constitutional error."  Advisory Committee Note to Rule 4 of the Rules Governing Section 2254 Cases (quotation marks omitted).

Thus, we examine the allegations in . . . the § 2254 petition to see whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right."  In making this determination, we consider the fact-pleading requirement for § 2254 petitions, and the standard from *Strickland*.

*Hittson*, 759 F.3d at 1269–70 (footnotes omitted).

Here, Petitioner has failed to show that his post-conviction counsel was ineffective for failing to present an IATC claim based upon trial counsel's failure to advise Petitioner, prior to entry of his plea, that the State filed the Amended Information after expiration of the 175-day speedy trial period set for in Rule 3.191 of the Florida Rules of Criminal Procedure.

Rule 3.191(a) provides generally that the State must bring a defendant charged with a felony to trial within 175 days. However, "[t]his right is not self-executing and requires a defendant to take affirmative action to avail himself of the remedies provided under the statute." *Dillard v. Sec'y Dep't of Corr.*, 440 F. App'x 817, 819 (11th Cir. 2011) (citing *State v. Nelson*, 26 So. 3d 570, 574 (Fla. 2010)).[2] Thus, as with other rights that constitute a personal privilege, "a defendant may waive his or her right to a speedy trial, after which the defendant may not assert the statutory right to be tried within the default period." *Nelson*, 26 So. 3d at 576. The right to a speedy trial is waived when the defendant or his attorney requests a continuance. *State v.*

---

[2] Specifically, after the 175-day speedy trial period expires, a defendant may file a "Notice of Expiration of Speedy Trial Time," which triggers a 10-day "recapture period." Fla. R. Crim. P. 3.191(p)(2). Within five days of filing the notice, the court must holding a hearing to determine whether any exceptions exist which would prevent speedy trial, such as the defendant's unavailability. *See* Fla. R. Crim. P. 3.191(p)(3). If no exceptions exist, the trial court must order the defendant to be brought to trial within the 10-day recapture period. *See* Fla. R. Crim. P. 3.191(p)(3).

*Riechmann*, 777 So. 2d 342, 365 (Fla. 2000). "[W]hen the State is entitled to the recapture period, a continuance that is chargeable to the defense and made after the expiration of the speedy trial period but before a defendant files a notice of expiration waives a defendant's speedy trial rights under the default period of the rule." *Nelson*, 26 So. 3d at 580. A waiver of speedy trial by counsel is binding on the defendant, "even though done without consulting him and even against the client's wishes." *State v. Kruger*, 615 So. 2d 757, 759 (Fla. 4th DCA 1993) (quotation omitted); *see also McKenzie v. State*, 29 So. 3d 272, 282 (Fla. 2010); *Dillard*, 440 F. App'x at 820.

The record in this case demonstrates that the 175-day speedy trial period began with Petitioner's arrest on September 21, 2006 (Ex. P at 8–9). On September 28, 2006, the State filed an Information charging Petitioner with one count of sexual battery of a person twelve years of age or older (*id.* at 1). The 175-day speedy trial period expired on March 15, 2007. Petitioner was declared incompetent to proceed from April 3, 2007 to November 8, 2007. On January 16, 2008, Petitioner, through counsel, moved for a continuance, and the court granted the continuance (*see id.* at 606–26). On January 18, 2008, the State filed an Amended Information adding a second charge of sexual battery and three charges of the delivery of a controlled substance to a person less than eighteen years of age (*id.* at 2–3).

Considering that Petitioner's right to a speedy trial was waived by defense counsel's obtaining a continuance after the 175-day speedy period expired, Petitioner's post-conviction counsel was not ineffective for failing to present an IATC claim based upon trial counsel's failure to advise Petitioner, prior to entry of his plea, that the Amended Information was filed after the 175-day period expired or that Petitioner was entitled to discharge on this basis. Petitioner has failed to demonstrate that the *Martinez* exception applies to overcome the procedural default of Ground Three. Therefore, he is not entitled to habeas relief on this claim.

D.    Ground Four: <u>"Trial counsel was ineffective for failing to motion the court for an expert to aid defense in determining the Petitioner's sanity at the time of the offense."</u>

In Petitioner's final claim, he contends trial counsel was ineffective for failing to file a motion for appointment of an expert to aid in determining Petitioner's sanity at the time of the offense (ECF No. 1 at 9–10; attached memorandum at 15–16). Petitioner concedes he did not present this IATC claim to the state courts (ECF No. 1 at 10–11). As with Ground Three, Petition relies upon *Martinez* to excuse the procedural default (ECF No. 1, attached Memorandum at 5–7).

Respondent contends this IATC claim was not exhausted in state court and is therefore procedurally barred from federal review (ECF No. 18 at 53–54).

Respondent contends Petitioner is not entitled to review under *Martinez*, because his IATC claim is not substantial (*id.* at 54–55).

Petitioner has failed to demonstrate he was prejudiced by his post-conviction counsel's failure to present an IATC claim based upon trial counsel's failure to request appointment of an expert to determine Petitioner's sanity at the time of the offense. Considering Attorney Rayne's testimony at the post-conviction evidentiary hearing, that he discussed the sanity issue with Dr. Spence and Dr. Spence opined that Petitioner was sane at the time of the offense, as well as the fact that the post-conviction court found Rayne's testimony credible, Petitioner has failed to demonstrate a reasonable probability he would have been granted post-conviction relief if his post-conviction counsel had presented the IATC claim.

Petitioner failed to satisfy *Martinez*; therefore, he has not shown cause for his procedural default of Ground Four.  Petitioner is thus not entitled to a federal merits review of this claim.

## V.   CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is

issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  *Buck v. Davis*, 580 U.S.—, 137 S. Ct. 759, 773 (2017) (citing *Miller-El*, 537 U.S. at 327).  Here, Petitioner cannot make that showing.  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party

may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 29<u>th</u>day of May 2019.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**